# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PRESTON EUGENE BRANUM, On Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action 04-1686 |
| UNITED PARCEL SERVICE, INC., AND DOES 1-100 | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM ORDER

CONTI, District Judge

### *Background*

Pending before the court is the motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendant United Parcel Service, Inc. ("UPS" or "defendant") (Doc. No. 5) to dismiss with prejudice in their entirety the class action allegations and class claims asserted by Preston Eugene Branum ("Branum" or "plaintiff").  Plaintiff's complaint alleges a violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, against UPS for discrimination in employment on behalf of himself and all others similarly situated.  After consideration of the parties' submissions, defendant's motion to dismiss the class action allegations and class claims is **DENIED WITHOUT PREJUDICE** to defendant's right to raise

the issue, subject to a review of a fully developed record, in a motion for summary judgment

filed pursuant to Federal Rule of Civil Procedure 56.

### *Facts Accepted As True for Purposes of Deciding the Motion*

Plaintiff brings this action of behalf of himself and all others similarly situated.

Complaint ("Compl.") ¶ 2.  Defendant is one of the world's largest private mail carriers.  Compl.

at ¶ 19.  Defendant employs hundreds of thousands of individuals worldwide, including 70,000

package drivers in the United States.  Id.  Plaintiff is a resident of the state of Louisiana.  Id. at ¶

7.  Plaintiff has been diagnosed with major depression and post-traumatic stress disorder

("PTSD"), including delayed onset, chronic PTSD.  Id. at ¶ 9.  Plaintiff has been suffering the

effects of PTSD since the completion of his service in the Vietnam War.  Id.  Due to his

disability, plaintiff is sensitive to sudden, loud noises and shocking events.  Id.  Those type of

occurrences cause plaintiff to become dizzy, confused, nauseous, and nervous.  Id.

In September of 1981 plaintiff was hired by UPS as a fleet mechanic in Lake Charles,

Louisiana.  Id. at ¶ 7.  Plaintiff performed various duties at UPS including repair and

maintenance work on UPS vehicles.  Id.  Plaintiff was employed in this capacity for twenty-three

years, until 2004.  Id.

For several years, plaintiff was mistreated by supervisors and co-workers who were aware

of his disability.  Id. at ¶ 10.  The mistreatment included, among other things, the use of

firecrackers and static electricity to frighten plaintiff, jumping out from behind vehicles in which

plaintiff was working to startle him, and grabbing plaintiff's shoulder from behind.  Id.  This kind

of behavior caused plaintiff to experience extreme physical and mental duress, including one

incident that required plaintiff to make an emergency hospital visit.  Id.  Plaintiff's supervisors

not only refused to stop plaintiff's co-workers from engaging in that kind of conduct, but actively

participated in the ridicule.  Id.  UPS supervisors ridiculed plaintiff when he complained of

discriminatory treatment and retaliated against him when he called a company hotline to

complain.  Id.

On July 21, 2003, plaintiff, acting *pro se*, filed a charge of discrimination with the

EEOC.[1]  In the charge  plaintiff did not include any class allegations or class claims.  His

allegations related only to his own situation.  Specifically he alleged:

> I began employment with Respondent as a Mechanic in 1981.
> Beginning on or about December 5, 2001, and continuing, I have
> been harassed by my supervisors and co-workers who would sneak
> up on me and startle me intentionally; throw fire crackers or use
> static electricity to startle me; jump out from behind my truck, grab
> my shoulder, and shout loudly causing me to be rushed to the
> hospital because my blood pressure went up and my heart was
> racing; and make fun of my disability.  On April 1, 2003, I was
> suspended without pay after I called the company's hotline to
> report the harassment.  My doctor told me that Respondent had

---

[1]The court notes that exhibits, such as the EEOC documents attached to defendant's motion, may be considered in deciding the motion to dismiss because "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case . . . may be considered by the district court without converting the motion into one for summary judgment."  5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 376 (3d ed. 2004); Rogan v. Giant Eagle, Inc., 113 F.Supp.2d 777, 782 (W.D.Pa. 2000)(Cohill, J.)("It is clear to us that under the legal applicable standard we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one for summary judgment."); Burkhart v. Knepper, 310 F.Supp.2d 734, 741-42 (W.D.Pa. 2004)(Gibson, J.)(holding that a district court is permitted to consider public records when deciding a motion to dismiss without converting the motion into a motion for summary judgment); Hercik v. Rodale, Inc., 2004 U.S. Dist. LEXIS 9912, at *3-4 (E.D. Pa. May 24, 2004)(holding that a motion to dismiss was not converted into a motion for summary judgment when the court considered an EEOC charge of discrimination and other documents because those documents were public records).

called her and told her that I had threatened to kill everyone in the
building, and she took me off the service.  Respondent also told
employees to approach me with caution, use soft kit [sic] glove etc.
My co-workers continue to harass me and would put their hands up
when they see me saying "Don't hurt us."

Supervisor, Gerald Castille (about 28 years old) harassed me and
stated that his father can work faster than me and that the younger
mechanics can do work twice as fast as me.  He also told me that
there was nothing he could do to stop my co-workers from startling
me.  Supervisor, Alvin Vonadore, participated in the harassment.
Center Manager, Clide Lawrence, failed to take any action to stop
the harassment even after I complained.

I believe Respondent violated Title I of the Americans with
Disabilities Act of 1990, by allowing the supervisors and co-
workers to harass me based on my disability, and by retaliating
against me for protesting the harassment.  I also believe that
Respondent violated the Age Discrimination in Employment Act of
1967 by discriminating against me based on my age (55 years old)
in that comments relating to my age were made constantly.

Exhibit A to Def.'s Motion to Dismiss.

During the pendency of plaintiff's charge with the Equal Employment Opportunity

Commission ("EEOC"), in 2004, plaintiff's supervisor snuck up on plaintiff and punched him in

the arm.  Compl. at ¶ 11.  Reacting with surprise to the blow, plaintiff whirled around suddenly

and injured his neck.  Id.  As a result, plaintiff was diagnosed with a ruptured disk in his neck and

several bulging disks in his back.  Id.

After the diagnosis, plaintiff was permitted by UPS to return to work for a short time,

prior to his vacation.  Id.  Upon attempting to return to work after vacation, however, UPS,

through plaintiff's managers, informed plaintiff that he was being placed on worker's

compensation and that he could not return to work under he received a 100% medical release.  Id.

11, 18.  Defendant treated plaintiff less favorably than other employees because of his disability

status.  Id. at 11.  Defendant's behavior created a hostile work environment for plaintiff.  Id. at ¶ 12.

On August 5, 2004, the EEOC dismissed the charge and issued a Dismissal and Notice of Rights.  Compl, Ex. A.  On November 4, 2004, plaintiff filed the complaint commencing this lawsuit and included the following class allegations:

> UPS does not provide accommodations, including light duty work, to those that are disabled, those who UPS regards as disabled, or those that have a history of disability.  Id. at ¶ 13.  UPS provides light duty work only to employees that UPS believes are temporarily injured or disabled through UPS' temporary alternative work ("TAW") program.  Id. at 13, 19.  Employees that are unlikely to make a full recovery within a short period of time are deemed ineligible to perform work through the TAW program.  Id. at ¶ 19.  UPS denies effective accommodations to those who disabilities are chronic or long-term or those that UPS believes have disabilities that are chronic or long-term.  Id. at 13.

> By policy, when UPS determines that an employee has a chronic or long-term disability, UPS does not engage the employee in the required interactive process.  Id.  Rather, UPS requires the disabled employee to have a physician complete a written report and submit the report directly to UPS.  Upon receipt, UPS reviews the form and make a determination whether it believes the individual requesting the accommodation is a "qualified individual with a disability" as a matter of law.  Id.  UPS does not question the content of the form nor do they communicate directly with the individual seeking the accommodation.  Id.  The only communications from UPS to an employee seeking an accommodation are UPS' request for a letter from the employee's physician and UPS' letter to the employee denying an accommodation.  Id. at ¶ 14.  UPS fails to seek information directly from the employee regarding his or her relevant education, skills, abilities, and limitations or restrictions and does not inquire into whether the disabled employee's major life activities are substantially limited by their disability.  Id.

> UPS' written policy, the ADA Compliance Program ("Compliance program"), provides for a multi-step process that UPS managers are directed to apply to employees seeking to return to work following medical leave or an injury.  Id. at ¶ 16.  Under the Compliance program, upon notification by an employee of a disability and a request for an accommodation, UPS' medical officer gathers information from the

employee's doctor on a form provided by UPS.  Id.  After a review of this form, UPS makes a legal judgment whether the employee making a request is a "qualified individual with a disability" within the ADA.  Id.  UPS engages in the interactive process only when UPS decides that the employee has a legally qualifying disability.  Id.  UPS then determines whether the accommodation is "warranted or feasible."  Id.

With few exceptions, UPS' job descriptions falsely state that the ability to lift seventy pounds is an essential function of every job.  Id. at ¶ 17.  It is the policy of UPS to include as essential duties in job descriptions duties which are rarely, if ever, necessary to perform that job.  Id.  UPS has a policy of refusing to reinstate individuals, regardless of their disability status, in retaliation for exercising their rights under the ADA.  Id. at ¶ 18.

Defendant argues that plaintiff's failure to include class allegations or class claims in his EEOC charge of discrimination is fatal to his attempt to assert class claims in this case.

### Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss the court is not opining on whether the plaintiff will be likely to prevail on the merits.  Rather, the court accepts as true all factual allegations in the complaint and views them in a light most favorable to the plaintiff.  U.S. Express Lines Ltd. V. Higgins, 281 F.3d 383, 388 (3d Cir. 2002); Angelino v. The New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999)(exhaustion and timeliness defenses raised in a motion to dismiss are not considered under Rule 12(b)(1), but rather are considered under Rule 12(b)(6), "where the court is required to accept as true all the allegations of the complaint and all inferences arising from them").  The pleader is required to "set forth sufficient information to outline the elements of his claim or to

permit inferences to be drawn that these elements exist." Kost, 1 F.3d at 183.  A motion to dismiss will only be granted if it appears that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  Id.

### Discussion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant moves to dismiss with prejudice in their entirety the class action allegations and class claims asserted by plaintiff in his complaint (Doc. No. 5).  Specifically, defendant argues that because plaintiff did not make any class allegations or assert any class claims in his EEOC charge of discrimination, those claims must be dismissed from this action.  Branum argues that a complaint asserting claims under the ADA may allege any claim of discrimination, such as the class allegations and class claims in his complaint, that could reasonably have been expected to grow out of an EEOC investigation.

        In deciding  a motion to dismiss, the court must accept all of the factual allegations in the complaint and all reasonable inferences therefrom as true and viewed in light most favorable to the plaintiff. U.S. Express Lines, 281 F.3d at 388; Oshiver v. Levin, 38 F.3d 1380, 1391-92 (3d Cir. 1994); D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1367 (3d Cir. 1992).  A court may dismiss a complaint only if it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to prevail.  Walsh v. United Parcel Service, Inc., No. 94-757, 1994 U.S. Dist. LEXIS 21289, at *3-4 (W.D. Pa. December 5, 1994)(Ambrose, J.)(citing Conley v. Gibson, 335 U.S. 41, 45 (1957)).

With that framework in mind, the court will address whether the class action allegations and class claims should be dismissed for failure to allege class allegations or class claims in plaintiff's charge filed with the EEOC.[2]

### a.  Standard for determining scope of ADA civil action

In Hicks v. ABT Associates, Inc., 572 F.2d 960 (3d Cir. 1978), the United States Court of Appeals for the Third Circuit addressed the applicable standard for determining the scope of a civil action asserting claims arising under Title VII.[3]  Id.  The court recognized: "Once a charge has been filed with the EEOC, this court has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"  Id. at 966 (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  In Hicks, the court of appeals considered several issues which arose in an action brought under Title VII.  The plaintiff was Caucasian and after being terminated from his employment as a supervisor filed pro se a charge of discrimination with the EEOC.  In the charge he checked the box for the type of discrimination as being "race or color," but did not mark the box labeled "sex."  In his statement in the charge he referred only to discrimination based upon his race.  A few months later he filed pro se a second charge and again marked only the box for racial discrimination.  The EEOC later issued its determination that no reasonable cause existed and notified the plaintiff of the right to sue.

---

[2]A close reading of the charge filed with the EEOC in this case shows that no class allegations or class claims were made in that charge and the complaint reflects that the incidents giving rise to the class allegations occurred during the pendency of the EEOC investigation.

[3]Decisions relating to the administration and judicial enforcement of Title VII claims are applicable to ADA claims by reason of  Title VII's administrative and judicial enforcement provisions being incorporated by reference into the ADA.  See 42 U.S.C. § 12117(a).

8

The plaintiff in <u>Hicks</u> filed a *pro se* complaint against the defendant alleging acts of discrimination based upon race and sex.  The defendant filed a motion for summary judgment to which the plaintiff, who was *pro se,* responded,  but set forth no evidence in the record.  The district court granted the motion for summary judgment finding, among other things, that the sex discrimination charge was jurisdictionally barred because the plaintiff had not filed a charge of discrimination based upon sex with the EEOC.  On appeal the court of appeals noted: "The filing of a charge with the Commission by an aggrieved party and the receipt of a notice of the right to sue are jurisdictional prerequisites to a civil action under Title VII."  <u>Id.</u> at 963.  The purpose of the jurisdictional prerequisites are so that the EEOC may "give notice to the employer and to make an investigation to determine whether there is reasonable cause to believe that the charge is true."  <u>Id.</u>  This process enables the EEOC to seek informally to conciliate the dispute between a former employee and the employer.

In <u>Hicks</u>, the record reflected that the plaintiff had attempted to amend his charge with the EEOC to include sex discrimination.  The court determined that, by failing to accept the amendment, the EEOC in effect failed to comply with its statutory obligations and that failure would not bar a civil suit by the charging party.  In <u>Hicks</u> the court commented that when applying a regulation permitting amendments of a charge "we keep in mind that charges are most often drafted by one who is not well versed in the act of legal description.  Accordingly, the scope of the original charge should be liberally construed."  <u>Id.</u> at 965.

Even if the plaintiff had not attempted to amend the complaint, the court found that summary judgment would still not be appropriate because "the district court did not apply the correct standard in holding that it did not have jurisdiction over the sex discrimination claim."

Id. at 965.  In Hicks the court noted that there was a timely charge filed involving race discrimination "in rather broad terms."  Id. at 967.  Thus, the EEOC could have commenced an investigation and in those circumstances "the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination ....'"  Id. at 966 (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).

The court rejected the argument of the defendant that the district court is to look only at the actual investigation to determine the scope of the civil complaint.  The court noted that "[i]f the EEOC's investigation is unreasonably narrow or improperly conducted, the plaintiff should not be barred from his statutory right to a civil action."  Id. at 966.  Also, of note was that the "defendant has shown no prejudice from expanding the scope of the civil action beyond that of the EEOC investigation."  Id.  The court concluded that "the correct rule for the scope of the civil complaint which may follow a notice of the right to sue from the EEOC, irrespective of the actual content of the Commission's investigation, is that in Ostapowicz."  Id.

The court in applying the Ostapowicz standard examined two factors:  1) whether the EEOC would have discovered a claim for sex discrimination in the course of a reasonable investigation and 2) whether "the sex discrimination claims which would have been uncovered were reasonably within the scope of the charge filed with the EEOC."  Id. at 967.  The court noted the charge contained certain broad terms such as "disparate treatment" and that the facts related to the race claims implicated sex discrimination as well.  Since the record did not contain "evidence of the investigatory practices of the agency," the court was not able to determine the

scope of a reasonable investigation.  Id.  Thus, summary judgment was inappropriate because genuine material issues of fact existed.

The court in Hicks, as noted above, referred expressly to the standard set forth in Ostapowicz.  In Ostapowicz, the issue involved a contested class action in which claims were asserted under Title VII.  The charge filed with the EEOC set forth class allegations relating to a particular department of the defendant's business.  As a consequence the EEOC's investigation and findings were limited to that particular department.  After the initial charge was filed, the plaintiff, who did not work in the department investigated by the EEOC, filed two additional charges.  The EEOC later sent right to sue letters to the plaintiff and others referring to the initial charge.  The EEOC then, without any additional investigation, issued right to sue letters for the subsequent charges.  All of the charges were included in plaintiff's complaint.  The district court certified the case as a class action finding that there was a *prima facie* case of discrimination. The defendant on appeal contended that the district court lacked jurisdiction because the original charge was limited to the employees in one particular department.  The defendant asserted that the plaintiff was not able to "piggyback" onto that charge and, therefore, the district court lacked jurisdiction.  The court of appeals held that the jurisdictional requirements of Title VII require the EEOC to review administratively charges of discrimination and conciliate the matter if possible.  The court recognized "that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . , including new acts which occurred during the pendency of the proceedings before the Commission . . . ."  Id. at 398-99 (citations omitted)(emphasis added).

The court reviewed the EEOC's involvement which included receiving the separate charges filed by the plaintiff, and the conciliation discussions which took place after the filing of the charges by the plaintiff.  The additional charges were "considered explanations of the original charge and growing out of it."  Id. at 399.  In those circumstances the court found that the district court did not err in finding that it had jurisdiction.  If the additional charges had not been filed, and all the EEOC had before it was the original charge, limited to one department, and an EEOC report which also was limited to that department, the court recognized that "there would be some force to the defendant's contention that [the plaintiff] could not bring herself within the scope of the EEOC charge and subsequent suit letter."  Id.

In Anjelino v. The New York Times Co., 200 F.3d 73 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit described Ostapowicz as follows:

> Ostapowicz was a Title VII class action in which an employer was found to have engaged in sex discrimination in job classifications, resulting in women being laid-off from work, while men with less seniority were either retained or recalled to work at an earlier date than the women. . . .  In Ostapowicz, we set out the procedures for filing discrimination claims and the reasons for following these procedures: When "an aggrieved person" files a claim with the EEOC, the agency notifies the employer and conducts an investigation.  If the charge reasonably appears to be true, the EEOC attempts conciliation.  If conciliation does not succeed, the EEOC notifies the aggrieved party of his or her right to bring suit. The preliminary step of the filing of the EEOC charge and the receipt of the right to sue notification are "essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action." . . . Because the aim of the statutory scheme is to resolve disputes by informal conciliation, prior to litigation, suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle. . . .

In <u>Ostapowicz</u>, the defendants claimed on appeal that the District
Court had lacked jurisdiction to hear the case because the right to
sue letter, upon which the plaintiff relied in filing suit, and the
EEOC's initial report in the case only concerned employees in the
company's shipping division.  The plaintiff worked in a different
division.  Subsequently, however, the plaintiff filed additional
EEOC charges that related to the division in which she worked. . . .
Several months after the additional charges were filed, the plaintiff
and certain of her co-workers requested and received right to sue
letters from the EEOC.  In the suit against the employer, the
plaintiff and other members of the class referred to both the initial
and subsequent EEOC charges.

On these facts, we rejected the defendants' argument that the scope
of the initial charges deprived the trial court of jurisdiction to hear
the case.  We found that the additional charges, which were filed
during the pendency of the administrative proceedings, "may fairly
be considered explanations of the original charge and growing out
of it." . . .  In this way, we affirmed that the "parameters of a civil
action in the District Court are defined by the scope of the EEOC
investigation which can reasonably be expected to grow out of the
charge of discrimination, including new acts which occurred during
the pendency of proceedings before the Commission." . . .

Because the EEOC had cognizance of the full scope of the
situation during its settlement efforts, the purpose of the
notification requirement had been served.

In <u>Hicks</u> . . . we arrived at the same conclusion concerning the nature of
the filing requirement and its effect on the court's subject matter
jurisdiction in discrimination suits.

200 F.3d at 93-94 (citations omitted).  The court further noted:

In a case in which the EEOC has conducted a complete
investigation, it will have presumptively prepared a report
explaining the reasons for its recommendation; completed a
running case log indicating all actions taken in the case, . . . ; and
assembled a file containing the investigator's work product,
jurisdictional items, and relevant evidence. . . .  When we held in
<u>Ostapowicz</u> and <u>Howze</u> that the scope of a Title VII action in
federal District Court is determined by the initial charges filed with
the EEOC and subsequent explanations or outgrowths of these

13

> charges, we did so in cases in which such an investigation of the charges had been conducted and records of the EEOC's actions had been compiled. We will leave to another day the question whether the EEOC should be presumed to have notification of such subsequently filed allegations when it does not complete its investigation prior to issuing the right to sue letter.

Id. at 95 n.28.

The court in Angelino dealt with Title VII claims relating to charges filed by female plaintiffs which used the words "abusive," "hostile," "environment," and "atmosphere." The court found these words were sufficient to permit a civil action for a hostile work environment because the words used in the charge were interchangeable with a description of hostile work environments. Therefore, because the initial charges related to an abusive atmosphere the court found that was sufficient to give notice of hostile work environment claims.

As discussed above the United States Court of Appeals has consistently held, whether in a class action context, i.e., Ostapowicz (decided in 1976) or when individual claims are involved, i.e., Hicks (decided in 1978) and Angelino (decided in 1999), that the scope of a civil action is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz, 541 F.2d at 398-99. This court concludes that same standard should be applied in this case.

**b. ADEA class actions**

Defendant relies on decisions dealing with class actions under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.[4], to limit Title VII and ADA class

---

[4]A class action under the ADEA is sometimes referred to as a "collective" action rather than a class action. See Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54 (D.N.J. 1996).

actions to only situations where class allegations or class claims were raised in a timely administrative charge.  In other words, defendant asserts that the scope of an EEOC investigation, or what can reasonably be expected to grow out of an investigation, which were considered in Hicks and Ostapowicz in determining the scope of a civil action, are not at all relevant when a class action is filed.  In that context defendant argues only the administrative charge is reviewed and if it fails to include class allegations or class claims, no class action can be maintained.

The United States Court of Appeals for the Third Circuit considered the effect of a failure to include class allegations in a charge of discrimination filed with the EEOC in an ADEA class action in Lusardi v. Xerox Corp., 855 F.2d 1062 (3d Cir. 1988).  In that case, which was decided after Hicks and Ostapowicz, but prior to Angelino, the court did not discuss Hicks or Ostapowicz.  In Lusardi the plaintiffs appealed an order of the district court revoking a class certification in the ADEA context.  Because that kind of issue is generally not appealable, the plaintiffs requested, in the alternative, that the court "issue a mandamus to the district court directing it to continue the class certification."  Id. at 1064.  The district court's determination to decertify the class was made after the completion of discovery.  In making the determination to decertify the class the district court applied to an ADEA class action the "similarly situated" requirement of section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  The district court also found the provisions of section 16(b) of the FLSA, which are incorporated into the ADEA, require, among other things, for a class action that individual members of the class must opt-in to the class and must "have demonstrated their bases for awards."  Id. at 1067.  The

district court concluded that the plaintiffs were not similarly situated and that class certification was not appropriate.

The district court in <u>Lusardi</u> interpreted the ADEA to require that each member of the potential class must file a timely discrimination charge with the EEOC.  The court of appeals in considering the petition for mandamus, among other things, reviewed whether that determination was a clear error of law.  It should be noted that the court in <u>Lusardi</u> found that it lacked appellate jurisdiction over many of the plaintiffs' arguments.  "Because we find that we lack appellate jurisdiction and that mandamus is not warranted except with respect to the requirement that each class plaintiff must have filed a timely administrative claim, we do not reach the merits of [the plaintiffs'] other arguments."  855 F.2d at 1067.  The court noted that while the writ was seldom used and in fact discouraged, "when no other avenue is open, *i.e.*, when a party seeking the writ has no other adequate means to obtain the relief he desires and the court below has committed a clear error of law, it may issue."  855 F.2d at 1069.

The court of appeals commented on the applicability of section 16(b) of the FLSA to an ADEA class action:  "The availability of the class action device to [the plaintiff] is not controlled by Federal Rule of Civil Procedure 23 but rather by § 16(b) of the FLSA, incorporated into the ADEA by § 626(b)of the that statute."  <u>Id.</u> at 1070.  Section 16(b) was enacted on June 25, 1983, at a time when the binding affect of a class action on absent class members was problematic.  The problems arose because of due process concerns which were addressed in 1938 by Congress providing for the opt-in class.  Under section 16(b) of the FLSA, as well as under former Federal Rule of Civil Procedure 23(a) which provided for a "spurious class" and was abandoned by a 1966 amendment, "absent members were not bound by the judgment."  <u>Id.</u> at 1070.  While the

16

opt-in class was abandoned by the 1966 amendment to Federal Rule of Civil Procedure 23(a), it

remains viable under section 16(b) of the FLSA and is applicable to class claims filed under the

ADEA.  The opt-in class if "[u]sed properly . . . reduces multiplicity of suites and offers a

convenient means of settling issues common to a large number of persons whose interest is

sufficiently similar."  Id. at 1071.

The question before the court of appeals was "whether each member of the opt-in class

must individually satisfy all timeliness requirements.  The resolution of that issue depends upon

the intent of Congress in enacting § 16(b) and the incorporation of that section in the ADEA."

Id.  The plaintiffs in Lusardi argued "that the district court committed a clear abuse of discretion

in ruling that the decertified opt-in claimants would be barred from filing individual ADEA suits

if they had not each filed timely administrative charges with the EEOC."  Id. at 1075.  In the

order decertifying the class, the district court noted that the notice to be sent would provide that

the consent to be a party plaintiff was revoked and would state:

> If you *did* not timely file an administrative charge of age discrimination
> . . . your claim could be barred under statutes of limitations provided for
> in ADEA.

Id. at 1075 (emphasis in original).  The court of appeals found the notice confusing and plainly

wrong as a matter of law because it stated "that an individual claim could be barred if the

individual did not file a timely administrative charge."  Id. at 1076.

The EEOC supported the plaintiffs' position that as long as a representative complaint

was filed the individual filings were not a prerequisite to opting-in to a class action.  The court

noted that position is buttressed by the 1978 amendment of section 7(d) of the ADEA, which

changed the requirement that an individual give notice to the Secretary to a requirement that "'no

17

civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary.'" Id. at 1077 (quoting Pub. l. 95-256, 92 Stat. 190).  "The majority of courts that have addressed the issue since the 1978 amendment have held that individuals can rely on the named plaintiffs' timely charge if it gives notice of class discrimination."  Id.

The district court had found that none of the administrative charges filed by the four named plaintiffs were filed on behalf of others similarly situated.  The court of appeals disagreed and found that the words "similarly situated" do not have to be alleged, it is sufficient if "[t]he charge clearly notifies [the defendant] that it allegedly discriminates against persons over forty years old as a class . . . . So long as class issues are alleged, a timely charge may serve as the basis for a class action."  Id. at 1078.

The charges in Lusardi were found by the court of appeals to be sufficient to give the defendant notice of class issues.  The court found that it had the power to issue a writ of mandamus because "[t]he language of the notice concerning the necessity for administrative filing and the mingling of that issue with the tolling of the statute of limitations is confusing and has elements of procedural unfairness."  Id. at 1079.  The court concluded it would issue a writ of mandamus to correct that "particular error."  Id.  The court noted that issue was important not only to claims under the ADEA, but also to claims under Title VII and compared 29 U.S.C. § 626(d) of the ADEA with 42 U.S.C. § 2000e-5(e) of Title VII.  Both of those sections require, among other things, that **an administrative charge** be filed with the EEOC within 180 days of the alleged unlawful practice.

18

Section 626 of the ADEA permits a **civil action** to be filed 60 days after the charge has been filed. A **civil action** asserting claims under Title VII and the ADA, however, can only be filed if the charge is dismissed by the EEOC or

> if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1). The comparison raised in <u>Lusardi</u> did not deal with the timing for filing a civil action or the appropriateness of a class action, but rather dealt with the timeliness of the filing of the administrative charge with the EEOC. The court of appeals in <u>Lusardi</u> found that "[i]f the district court's err is left uncorrected, the utility of the class remedy Congress prescribed in ADEA by incorporating FLSA § 16(b) will be "unduly circumscribed." <u>Id.</u> at 1079. The court therefore granted mandamus and directed the district court:

> to vacate its holding on the necessity of timely administrative filings of charges of age discrimination by the persons it has held do not constitute a proper opt-in class; to reconsider its order decertifying the class on the basis of disparate defenses without relying on the presence, or absence, of individual administrative charges, or their timing; and if it, nevertheless, concludes class decertification is required, to modify the proposed notice to the persons who opted-in to the putative class in conforming with this

> opinion by eliminating the last sentence of paragraph 3 and
> conforming the date in paragraph 4 for expiration of the stay or
> tolling of the statute of limitations on the opt-ins' individual claims
> to a date at least thirty days after entry of its order correcting the
> notice.

Id. at 1080.

The difference in timing relating to when a **civil** action may be filed for claims arising

under the ADEA as to opposed to when a civil action may be filed for claims arising under Title

VII and the ADA implicates the likelihood that the scope of the EEOC investigation for an

ADEA claim may be significantly different than a scope of the investigation for Title VII and

ADA claims.[5]  A plaintiff may commence a case asserting ADEA claims 60 days after the filing

of the charge, while a plaintiff who wants to assert a Title VII or ADEA claim generally may

only file a civil action within 90 days after the EEOC gives notice of a right to sue.  That

difference in timing for filing a civil action is a material difference that needs to be considered in

determining whether Lusardi has impacted Hicks in the context of class actions filed under the

ADA.

Approximately one year after the decision in Lusardi and approximately ten years prior to

Angelino, the court of appeals in Lockhart v. Westinghouse Credit Corp., 879 F.2d 43 (3d Cir.

1989), *overruled on other grounds by* Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993),

considered the issue of a class action in the context of ADEA claims and affirmed the central

holding of Lusardi.  It held that individuals, who failed to file timely administrative charges,

could not "piggyback" onto a plaintiff's EEOC charge unless the plaintiff's charge alleged class

---

[5]For a discussion of the scope of an EEOC investigation see DONALD R. LIVINGSTON,
EEOC LITIGATION AND CHARGE RESOLUTION Ch. 6 VI (BNA 2005).

based discrimination.  Id. at 52.  In that case, the named plaintiff, Mr. Lockhart, was terminated

from his position.  He was 58 years old at the time.  He filed a written charge with the EEOC

asserting that he was discriminated against because of his age and that due to the consolidation of

branches into the Pittsburgh office, his position was filled by a younger individual.  The EEOC

advised Mr. Lockhart of his right to sue.  Mr. Lockhart then filed suit claiming that the defendant

violated the ADEA.  Several months later he filed a motion to join four additional parties

pursuant to the opt-in class action provisions applicable to the ADEA.  The additional individuals

were sought to be joined as being "similarly situated."  The district court granted the motion

without prejudice.  After the close of discovery the defendant filed a motion for summary

judgment against three of the joined plaintiffs because they had not filed charges with the EEOC

and were not eligible as plaintiffs because Lockhart's charge did not contain class allegations.

One of the additional plaintiffs was not involved in the summary judgment because he had filed a

timely charge with the EEOC.  The district court granted the motion as to one of the additional

plaintiffs because his action would have been time barred by the time the main plaintiff filed the

initial suit.  Trial commenced with respect to the original plaintiff and the remaining three

additional plaintiffs.  The jury found liability with respect to only two of the plaintiffs – the

original plaintiff and the one additional plaintiff who had filed a timely charge with the EEOC.

The defendant moved for judgment notwithstanding the verdict with respect to those two

plaintiffs on the basis of insufficiency of evidence.  The motion for new trial was denied.

On appeal the defendant argued, among other things, that the district court erred in

applying the opt-in provisions of section 16(b) of the FLSA, which are applicable to ADEA class

action claims.  The defendant's argument, among other things, was that the cumulative effect of

21

having witnesses with respect to those parties who were not proper opt-in plaintiffs was unduly prejudicial and warranted a new trial with respect to the original named plaintiff and the other opt-in plaintiff who had received favorable jury verdicts.  The court found that the two individuals who received unfavorable jury verdicts were improperly joined, but that the joinder was harmless error.  The relevant matter considered in <u>Lockhart</u> was not whether a collective action claim can only be filed if class allegations are averred in the charge, but rather was whether a party who had not filed a timely individual charge with the EEOC could opt-in if the original charge did not contain class allegations.  The court recognized that in the later situation – where a party did not file a timely charge – a party can opt-in "only if the original complainant's EEOC charge gave the employer notice of class-based age discrimination."  <u>Id.</u> at 53 (*citing* <u>Lusardi</u>).

The finding in <u>Lockhart</u> did not concern the maintenance of the class action, but rather related to who was able to piggyback onto a timely charge.  In <u>Lockhart</u> there was no question that an individual who had filed a timely individual charge was able to opt into the action filed by Lockhart even if class allegations were not made in Lockhart's charge filed with the EEOC.[6]  The failure to make class allegations in the original charge filed with the EEOC by Lockhart arguably was not fatal to the ability of an individual to opt into a later filed civil action so long as that individual had filed a timely charge.  The court of appeals found that the district court erred in

_____

[6]The court of appeals referred favorably to <u>Plummer v. General Electric Co.</u>, 93 F.R.D. 311 (E.D. Pa. 1981), for the test to determine whether plaintiffs are similarly situated.  A representative action was proper where the additional plaintiffs and the original plaintiff "were all (1) employed in the same corporate department, division and location; (2) advanced similar claims of age discrimination; and (3) sought substantially the same form of relief."  <u>Lockhart</u>, 879 F.2d at 51.

22

permitting two individuals to join in the law suit because they had not filed timely administrative charges and the charge filed by the initial plaintiff did not contain class action allegations; that "charge merely stated that [the defendant] terminated *his* position of employment on the basis of his age." Id. at 53 (emphasis in original).  The court of appeals noted that after the district court's determination it "adopted a narrower interpretation of section 16(b) in Lusardi."  879 F.2d at 52. The court commented that in Lusardi it "ruled that plaintiffs who had not filed charges with the EEOC could opt into an ADEA class action suit only if the original complainant's EEOC charge gave the employer notice of class-based age discrimination." Id. at 52-53.   The court in Lockhart made clear that in Lusardi what was being interpreted was section 16(b) of the FLSA. Lockhart only addressed opt-in class actions filed under the ADEA.  The court in Lockhart did not expand on Lusardi or make any comparisons to Title VII or the ADA.

### c. Lower courts' application of *Hicks, Lusardi* and *Lockhart*

Defendant also cites several district court decisions to support its argument.  With respect to the district court decisions, defendant cites first to Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54 (D.N.J. 1996).  In Kresefky, the  plaintiffs brought various claims and sought to proceed as a collective action on their ADEA claims and a class claim under Title VII and section 1981.  Id. at 57.  The court in Kresefky held that the plaintiffs could not prosecute collective claims under the ADEA because the plaintiffs failed to make class allegations in their EEOC charges.  "Because plaintiffs failed to notify defendants of their potential class claims in their EEOC charges, the Court will deny plaintiffs' request to proceed as a collective action on their *age discrimination* claims." Id. at 60-61 (emphasis added)(citing to Lusardi and Lockhart).

The court in <u>Kresefky</u> did not directly address whether the failure to include class claims in the EEOC charge would also bar a class action under Title VII.

In <u>Kresefky</u> the issue addressed in the Title VII context was whether the plaintiffs could even proceed as individuals on their Title VII claims because of their failure to raise those claims in the EEOC charge.  The court noted cases which cited <u>Hicks</u> for the proposition that "an action may be pursued for claims which would have been within the scope of a reasonable EEOC investigation if it had occurred."  <u>Id.</u> at 61.  While there were allegations that claims under Title VII had been raised with EEOC officials, the court noted the factual record was not sufficiently developed for the court to make a final determination on that question.

> Thus, the possibility remains that this Court might ultimately conclude that plaintiffs' failure to assert their race and national origin discrimination claims in their EEOC charges precludes them from raising them here.  This possibility, in turn, raises obvious questions about the commonality and typicality of the named plaintiffs' claims vis-a-vis other putative class members' claims, as well as the extent to which the named plaintiffs' interests coincide with other class members' interests.

<u>Id.</u> at 62.  In addition, the court in <u>Kresefky</u> found that the plaintiffs had not set forth the boundaries of the proposed Title VII class with the requisite precision, and, thus denied the class certification motion for the Title VII class.  It is not clear that the court in <u>Kresefky</u> would have imposed the limitations of <u>Lockhart</u> and <u>Lusardi</u> in a Title VII class action.

Defendant also relies on <u>Hoffman v. R.I. Enterprises, Inc.</u>, 50 F.Supp.2d 393 (M.D. Pa. 1999), and <u>Jackson v. Merck & Co., Inc.</u>, No. CIV A. 99-CV-3069, 1999 WL 962522 (E.D. Pa. October 21, 1999).  In those decisions the district courts found that the plaintiffs in each case could not proceed on their class claims under Title VII because the administrative charges in both

cases did not mention class allegations.  <u>Hoffman</u>, 50 F.Supp.2d at 398 (citing to <u>Lusardi</u> and

<u>Lockhart</u>); <u>Jackson</u>, 1999 WL 962522, at *6 (citing to <u>Lusardi</u> and <u>Lockhart</u>).  Those courts,

however, applied <u>Lusardi</u> and <u>Lockhart</u> in too broad a manner.

### d. *<u>Hoffman</u> misreads <u>Lusardi</u> and <u>Lockhart</u> and is distinguishable*

In <u>Hoffman</u>, the court considered a situation where an individual had counsel at the time

of the filing of an EEOC charge in which individual Title VII claims – but not class claims –

were raised.  The district court commented on <u>Lusardi</u> noting that in <u>Lusardi</u> the allegations in

the charge filed with the EEOC under the ADEA included class allegations.  The court found that

the issue addressed by the court of appeals in <u>Lusardi</u> "was whether a class action could be

brought where the EEOC charge failed to assert explicitly a class claim." <u>Id.</u> at 396.  This court

respectfully disagrees that the "precise issue" addressed by the court of appeals in <u>Lusardi</u> was

that described by the court in <u>Hoffman</u>.  As noted above, in <u>Lusardi</u> the court of appeals was

concerned with the clear error of law made by the district court with respect to whether, after an

opt-in class had been decertified in the ADEA context, individuals who had failed to file an

individual administrative charge within the time required by the ADEA would be barred from

filing a claim.  The court of appeals in <u>Lusardi</u> found that that was an important issue under the

ADA and also was important under Title VII.  Thus, the issue in <u>Lusardi</u> was not whether a class

claim could be brought in a civil action when the EEOC charge failed to assert a class claim, but

rather concerned the effect, after a class has been decertified, of  the failure to file a timely charge

with the EEOC.

<u>Lusardi</u> did not deal with the issue present in this case, *i.e.,* whether an individual who

files a charge lacking class allegations may nonetheless file a class claim under the ADA if the

25

reasonable scope of the investigation by the EEOC would have included the class claims. Lusardi required the district court to vacate its holding on the necessity of filing timely administrative charges, to reconsider decertifying the class on the basis of disparate defenses without relying on the presence or absence of individual administrative charges, and if the district court determined nonetheless to decertify the class, to modify the notice to the putative class. The district court in Hoffman found that the plaintiff's complaint did not provide notice of any class basis or claim and distinguished that case from Lusardi, in which class issues were raised in the administrative charges.  The court concluded that without class allegations there would be no ability for conciliation by the EEOC.

The court in Hoffman also concluded that Lockhart held that a class claim was not allowed because the class representatives' charge filed with the EEOC did not include class allegations.  In making that conclusion, the court's reading of Lockhart was too broad.  A class claim under the ADEA, at least as to those individuals who had timely filed charges, was not expressly precluded.

It was significant in Hoffman that the plaintiff had been represented by an attorney at the time of the filing of the original EEOC charge.  The district court in Hoffman distinguished Jenson v. Eveleth Taconite Co., 139 F.R.D. 657, 666 (D. Minn. 1991) (deemed a class period began to run from filing of an individual allegation of sexual harassment, which did not include class allegations; noting that "a complaint may be as broad as the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination"), because the plaintiff in Jenson was *pro se* and therefore entitled to a liberal interpretation of the charge.  50 F.Supp.2d 398 n.5.  The district court in Hoffman, however, found that the court in Jenson did not provide

Case 2:04-cv-01686-JFC   Document 17   Filed 12/23/05   Page 27 of 38


any detailed analysis and was not bound by <u>Lusardi</u>.  The court respectfully disagrees with the discussion in <u>Hoffman</u> as to the import of <u>Lusardi</u> with respect to whether class actions can be maintained if there is no charge placing an employer on notice of class based discrimination.  As discussed, <u>Lusardi</u> dealt in the ADEA context with a situation where a class had been decertified and was concerned with how the decertification would impact individuals who had not filed timely administrative charges.  The problem was that individuals who had opted-in may not have filed individual actions in reliance upon the certification of the opt-in class.  <u>Lusardi</u> held that individuals who opted-in did not need to file timely charges with the EEOC so long as the original charge filed with the EEOC included class allegations.  The court in <u>Lockhart</u> similarly held in the ADEA context that individuals who did not file timely administrative charges with the EEOC cannot opt into a class unless the original charge includes class allegations.

In <u>Hoffman</u> the court noted that <u>Hicks</u> recognized that in an individual action the plaintiff could include claims encompassed within matters which would reasonably be expected to grow out of an EEOC investigation.  In <u>Hoffman</u>, however, there was no EEOC investigation.  The court found it significant that <u>Lusardi</u> did not mention <u>Hicks</u>.  The distinction recognized by the court in <u>Hoffman</u> would be that class actions are governed by <u>Lusardi</u> and individual claims are governed by <u>Hicks</u>.  Thus, under the <u>Hoffman</u> rationale, only in cases involving individual claims under Title VII, and presumably under the ADA, would the action be defined by the scope of the EEOC investigation or what can reasonably be expected to grow out of that investigation, while class actions involving claims under Title VII and presumably under the ADA could only be maintained if there were class allegations in the underlying charge filed with the EEOC.  What the court in <u>Hoffman</u> failed to recognize is that the court in <u>Lockhart</u> would permit an opt-in class

27

to be maintained for individuals who had filed timely charges with the EEOC notwithstanding the failure of the original plaintiff to assert class allegations in his or her EEOC charge.  The court in <u>Hoffman</u> also did not recognize that the court in <u>Lusardi</u> was concerned with the impact on individuals who had not filed timely administrative charges after a class was decertified and also did not recognize that <u>Hicks</u> relied on <u>Ostapowicz</u>, which involved a class action.

The court in <u>Hoffman</u> commented on the differences between the decisions of the United States Court of Appeal for the Second Circuit and the United States Courts of Appeals for the Fifth and Ninth Circuits with respect to whether an EEOC charge which does not contain class allegations may support a Title VII class action.  <u>Hoffman</u> relied upon <u>Schnellbaecher v. Baskin Clothing Co.</u>, 887 F.2d 124 (7th Cir. 1989), where the court found that neither the EEOC charge nor the EEOC investigation were sufficient to give notice of class based allegations.  Ironically, while relying on <u>Schnellbaecher</u> the court in <u>Hoffman</u> did not give emphasis to <u>Schnellbaecher</u>'s consideration of the EEOC investigation.  <u>Fellows v. Universal Restaurants, Inc.</u>, 701 F.2d 447 (5th Cir. 1983), which concerned a *pro se* EEOC charge, was distinguished by <u>Schnellbaecher</u>.  In <u>Fellows</u>, an attorney for the plaintiff prior to the conclusion of the EEOC investigation wrote a letter to the defendant noting that a class action suit would be filed if a settlement was not obtained.  Thus, the defendant was aware of the class action potential during the EEOC investigation and in <u>Fellows</u> the EEOC had also requested discovery regarding other employees, but the defendant refused to respond to that request.  <u>Schnellbaecher</u> distinguished <u>Fellows</u> on the basis of factual differences.  <u>Paige v. State of California</u>, 102 F.3d 1039 (9th Cir. 1996), followed <u>Fellows</u> because the alleged discrimination in that case would have entailed an examination of potential class based discrimination.

28

      Hoffman relied on Schnellbaecher and was persuaded that the actual EEOC charge filed, and not the scope of the EEOC investigation, will control whether a class action suit may be commenced.  The court in Hoffman, however, failed to explain how the charge can control in the context of class action claims under Title VII when Hicks held that even a failure to give notice of a charge does not create a bar to a civil action.

> In Hicks, . . .  the court rejected the defendant's proposed limitation that the EEOC investigation sets the outer limit to the scope of a complaint. Thus, the Hicks court held that "if the EEOC's investigation is unreasonably narrow or improperly conducted, the plaintiff should not be barred from his statutory right to a civil action."  Hicks, 572 F.2d at 966. Moreover, "a civil suit will lie even where the EEOC has failed to give defendant notice of the charge or has failed to attempt to reconcile the parties either because of administrative failure or because of its finding of no reasonable cause."  Id. . . .  **Further, Hicks suggests that for this Court to find that [the plaintiff] failed to exhaust her administrative remedies, the [defendants] would need to show that they have been unfairly prejudiced by the expansion of the scope of the civil action beyond that of the EEOC investigation.**

Spirk v. Centennial School District, No. 04-cv-4821, 2005 U.S. Dist. LEXIS 27882, at *19-20 (E.D. Pa. Feb. 22, 2005)(emphasis added).

      What is significant in this case is that Branum, unlike the plaintiff in Hoffman, acted *pro se* in filing his original charge, and is entitled to a liberal review of the charge as articulated in Jenson.  Perhaps the most significant differences between Hoffman and the instant case are that a) Hoffman was decided after discovery had been conducted on the class certification issue – here at the motion to dismiss stage discovery is not relevant; b) the court in Hoffman based its determination on a finding that there was no EEOC investigation – here there is no factual record regarding the scope of an EEOC investigation; and c) the plaintiff was represented by counsel at the time the EEOC charge was filed – here plaintiff was not represented by counsel at the time

the charge was filed with the EEOC. The court in this case does not know what EEOC

investigation was conducted and, therefore, cannot determine whether a conciliation could have

been appropriate with respect to the ADA class claims.[7]  The court also does not know whether

information concerning class issues came to the attention of the EEOC or defendants during the

pendency of the EEOC investigation.

      The court respectfully disagrees with <u>Hoffman</u> and concludes that the <u>Lusardi</u> and

<u>Lockhart</u> decisions cannot be read so broadly[8] that the scope of the EEOC investigation or what

---

      [7]It's significant to note that in <u>Hohider v. United Parcel Service, Inc.</u>, 04-363 (W.D. Pa. Dec. 23, 2005), the plaintiff in a situation similar to Barnum, <i>i.e.</i>, the administrative charge did not contain class allegations and the complaint implicated the same policy at issue here, adduced evidence that the EEOC received information concerning the class claims and attempted to conciliate the class claims. Additionally, in <u>Hohider</u> the defendant received notice from the plaintiff's counsel during the EEOC investigation of the potential for class claims. Thus, it is conceivable that the plaintiff here may be able to adduce evidence that the class claims can reasonably be expected to grow out of the investigation of plaintiff's administrative charge.

      [8]The United States Court of Appeals for the Third Circuit in <u>Whalen v. W.R. Grace & Co.</u>, 56 F.3d 504, 506 (3d Cir. 1995), in commenting on "whether the single filing rule is applicable to non-class action ADEA lawsuits" noted that the holding in <u>Lockhart</u> "was **limited** to the context of section 16(b) class actions." <u>Id.</u> at 507 (emphasis added). The court in <u>Whalen</u> stated:

      Section 7(b) of the ADEA incorporates the enforcement "powers, remedies and procedures" of § 16(b) of the Fair Labor Standards Act . . . which provides, in relevant part, that "[a]n action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." We have held previously that this provision allows aggrieved individuals who failed to file the required § 7(d) EEOC charge to join a class action brought by a plaintiff who had filed an EEOC charge alleging class-wide discrimination. <u>Lusardi v. Lechner</u>, 855 F.2d 1062, 1077 (3d Cir.1988); accord <u>Lockhart v. Westinghouse Credit Corp.</u>, 879 F.2d 43, 52 (3d Cir.1989).

<u>Id.</u> at 506. In <u>Whalen</u> the plaintiffs argued that in non-class actions individuals who had not filed

could reasonably be expected to grow out of the investigation in the context of ADA class claims would be irrelevant.

### 1. *Jackson misapplies the rationale of Lusardi and Lockhart*

In <u>Jackson</u>, an African-American woman filed a Title VII class action and an individual disparate impact claim asserting, among other things, that she was constructively discharged.  The district court granted a motion to dismiss the Title VII class claims and the individual disparate impact claim filed by the plaintiff.  The Title VII class claims were dismissed because those claims were not included in the plaintiff's charge filed with the EEOC and were never investigated.  The court stated:

> In a class action suit, the named plaintiff must file a charge with an administrative agency, and class members are then permitted to piggyback" on the charge of the plaintiff rather than filing individual charges.

1996 WL 962522 at *4 (citing <u>Howlett v. Holiday Inns, Inc.</u>, 49 F.3d 189, 192 (6th Cir. 1992)(concerned an ADEA class action, not a Title VII class action).  The court relied on <u>Hicks,</u>

---

timely charges with the EEOC should be able to "piggyback" onto timely filed administrative charges when those charges included class allegations.  The court recognized:

> Unlike a class action under Fed.R.Civ.P. 23, under § 16(b), no person can become a party plaintiff and no person will be bound by or may benefit from a judgment unless he or she has affirmatively "opted into" the class . . . .

<u>Id.</u> at 506.  While in <u>Whalen</u> there were class allegations raised in the charges filed the EEOC, the plaintiffs did not bring a section 16(b) class action, but rather sought to amend their complaint to add other plaintiffs who had not filed timely administrative charges.  The court reversed the district court and instructed it to deny the motion to amend the complaint.  In the ADEA context, when class certification is not sought, individuals who failed to file timely administrative charges cannot be brought in as plaintiffs.

Lockhart, and Lusardi.  It quoted Hicks to describe that the "scope of `the ensuing civil action 'is defined by the scope of the EEOC investigation which can reasonably be expected grow out of the charge of discrimination. . . .'" Id.  Despite citing Hicks, the court found "[t]he allegations in a Title VII compliant must be limited to only those of which the administrative charge provided reasonable notice." Id.  (emphasis added).  Jackson therefore narrowed Hicks by considering only the charge and not the scope of the EEOC investigation.  That limitation is not supported by the rationale of Hicks as discussed above.

Jackson also relied on Lockhart and Lusardi for the proposition that the charge "must contain allegations of class issues to support a class." Id.  Jackson, however, did not review those decisions in detail or discuss whether there could be a material difference between the questions relating to class claims in the ADEA context and the Title VII or ADA context.  Most telling, however, is that Jackson, relied upon Howlett, which followed a fact-specific analysis in determining whether an ADEA class claim could be asserted when the underlying administrative charge did not contain class allegations.  Howlett involved ADEA claims and the application of the single filing rule.  In Howlett eleven plaintiffs filed sued alleging claims under the ADEA and moved to join another person as a plaintiff. The district court did not allow the joinder because that additional individual failed to file a timely charge with the EEOC.  The plaintiffs argued that the single filing rule permitted that individual's joining "because [the person to be joined] is similarly situated to the named plaintiffs who did file timely charges of age discrimination with the EEOC."  The court of appeals agreed with the plaintiffs and reversed the district court's decision.

32

**e. *Differences between class actions under the ADEA and the class actions under Title VII and the ADA***

Defendant argues that <u>Lockhart</u> and the other decisions which address ADEA class claims are precedential with respect to ADA class claims, like those in this case, because the United States Court of Appeals for the Third Circuit has held in light of the ADA, ADEA, and Title VII all serving the same purpose, namely, to prohibit discrimination against members of certain protected classes, similar standards would apply to those statutes.

> In the context of employment discrimination, the ADA, ADEA, and Title VII all serve the same purpose – to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well. Indeed, we routinely use Title VII and ADEA case law interchangeably, ***when there is no material difference in the question being addressed***.

<u>Newman v. GHS Osteopathic, Inc.</u>, 60 F.3d 153, 157 (3d Cir. 1995)(emphasis added). The problem for defendant is that the issues presented here involve material differences between class claims under the ADEA and class claims under Title VII and the ADA. The context and statutory scheme affecting collective actions under the ADEA are materially different from the scheme for class actions under Title VII and the ADA.

With respect to class allegations and the standards for class certification, the statutory scheme of the ADEA is quite different from the schemes of Title VII or the ADA. Under the ADEA, class actions are determined under the standard applicable to a case brought under the Fair Labor Standards Act, 29 U.S.C. § 626(b). In <u>Kresefky</u>, the court recognized: "The ADEA, 29 U.S.C. § 626(b), authorizes 'opt-in' class actions for age discrimination under the rules and procedures set forth in section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. §

216(b), as amended." 169 F.R.D. at 58. Under Title VII and the ADA, plaintiffs, however, must

satisfy the requirements of Federal Rule of Civil Procedure 23(a). Id; see also Whalen v. W.R.

Grace & Co., 56 F.3d at 506 (explaining the differences in the requirements for class actions

under section 16(b) and class certification under Rule 23(a)). The ADEA incorporates an "opt-

in" procedure and, thus the ADEA procedure is fundamentally different from the requirements

under Federal Rule of Civil Procedure 23(a). Whalen, 56 F.3d at 506n.3.

In Anderson v. Montgomery Ward & Co., Inc., 852 F.2d 1008 (7th Cir 1988), the United

States Court of Appeals for the Seventh Circuit commented on similarities between Title VII and

the ADEA, as well as certain differences. It noted that there is a similarity between the charge

filing requirements for the ADEA and Title VII:

> Certainly, both the Title VII requirement and the ADEA charge
> requirement are intended to perform the same functions. In both
> statutory schemes, the charge is designed to afford the defendant
> notice of the allegations and to permit conciliation by the
> EEOC. . . Notably, neither of these purposes is at all relevant in
> FLSA actions.

Id. at 1016. The court asked, however,

> [w]hether the differences between the litigation schemes of Title
> VII and ADEA require that we impose different standards on the
> charge-filing requirements despite their similarities in purpose
> during the prelitigation stage. In our view, the strong parallelism
> between the charge-filing requirements of ADEA and Title VII
> cannot be ignored. . . . We conclude, therefore, that Congress did
> not intend to require that every individual who files a suit under
> ADEA also must have filed an individual charge. However, we
> also believe that the charge-filing requirements under ADEA
> cannot be interpreted without any reference to the FLSA-based
> litigation process that Congress has mandated. In opting for the
> FLSA scheme, Congress also chose the "opt-in" provision of the
> FLSA. Under this provision, 29 U.S.C. § 216(b), all plaintiffs in an
> ADEA representative action must affirmatively opt-in to the

34

> suit. . . .  In light of this litigation procedure, we believe it is
> necessary that the defendant at least be apprised during the
> conciliation process of the possibility of a subsequent lawsuit with
> many plaintiffs. Therefore, in our view, the charge must, at the
> very least, contain an allegation of class-wide discrimination.

Id.  By its discussion, the court in Anderson, appears to be requiring class allegations in the charge for collective actions under the ADEA that would not necessarily be implicated in the context of Title VII or ADA class claims.  It is because of the FLSA scheme that, in the ADEA context, the court required class-wide allegations be included in the charge itself before individuals may opt-in to an ADEA class action.  In Anderson the court found that at least 23 timely charges contained class allegations and that the charge filing requirements for the ADEA were met.

Another difference is that under Title VII and the ADA, the EEOC is mandated to investigate a charge of discrimination, 42 U.S.C. § 2000e-5(b) ("the Commission shall serve a notice of the charge . . . on such employer . . . within ten days and shall make an investigation thereof") (emphasis added), while under the ADEA, the EEOC is permitted, but not required to investigate.  29 C.F.R. § 1626.15(a) ("As provided in Sections 9, 11, 16 and 17 of the Fair Labor Standards Act of 1938, as amended ... and Sections 6 and 7 of this Act, the Commission and its authorized representatives *may* (1) investigate and gather data") (emphasis added).[9]

---

[9]The court notes that the standard in Hicks appears to support the notion that the decisions involving class action claims under the ADEA are not applicable in the Title VII or ADA context.  Under the ADEA, as discussed above, the EEOC is not required to do an investigation.  In Title VII and ADA cases, the EEOC, however, is required to investigate.  The standard applicable in an ADEA case may not include the scope of the EEOC investigation because it may be proper to presume that no investigation will take place and thus there will need to be class allegations raised in the EEOC charge to give notice to the relevant defendant.  A standard requiring the court to consider the scope of an investigation simply may not be applicable in the ADEA context where no investigation is likely to occur.

35

*Conclusion*

Given the different context for collective actions under the ADEA and class actions under the ADA, the court concludes the framework for evaluating an EEOC charge for class allegations in the ADEA context does not apply in the Title VII or ADA context.  Accordingly, the court finds that <u>Lusardi</u> and <u>Lockhart</u> are not the applicable authority with respect to the issue raised by defendant.  The court notes that to find that <u>Lusardi</u> and <u>Lockhart</u> applicable in this context, the court would have to hold that <u>Hicks</u> and <u>Ostapowicz</u> were overruled at least in part by <u>Lusardi</u> and <u>Lockhart</u>.  In addition, the court notes that despite <u>Hicks</u> having been decided ten years prior to the decisions in <u>Lockhart</u> and <u>Lusardi</u>, the United States Court of Appeals for the Third Circuit in <u>Lusardi</u> and <u>Lockhart</u> made no attempt to distinguish or indicate that it was overruling <u>Hicks</u> or <u>Ostapowicz</u>.  <u>Lusardi</u> and <u>Lockhart</u> may not have mentioned <u>Hicks</u> or <u>Ostapowicz</u> because those decisions would not apply to ADEA class claims.  This court cannot find that <u>Hicks</u> or <u>Ostapowicz</u> directly or indirectly were overruled by <u>Lusardi</u> or <u>Lockhart</u>.  <u>Hicks</u> and <u>Ostapowicz</u> remain applicable precedent with respect to Title VII and ADA class claims.  The court concludes that there is no per se rule that would preclude, at a motion to dismiss stage, an ADA class action merely for failure to have class allegations set forth in the initial charge filed with the EEOC.

Whether in this case the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination would have included class claims cannot be determined when there is no record regarding the nature or scope of the investigation.  Under those circumstances, the court cannot make a determination about the scope of the EEOC investigation at the motion to dismiss stage of the proceedings.

36

The key issue in this context is: What scope of the investigation can reasonably be expected to grow out of the charge filed in this case?  Being mindful that, in a motion to dismiss, the court must draw all inferences in favor of the plaintiff, U.S. Express Lines, 281 F.3d at 388, the court cannot conclude, at this time, that class claims could not be reasonably expected to grow out of plaintiff's EEOC charge of discrimination because the scope of the EEOC investigation was not set forth in the pleadings.  A fully developed record is necessary before the court can rule on whether the class action claims asserted can reasonably be expected to grow out of the charge filed.  The scope of the investigation issue may be complicated because the plaintiff's individual ADA claims at issue in the class action claims arose from acts that occurred during the pendency of the investigation.  There also may be issues concerning the lack of prejudice to defendant if defendant, like the defendant in Fellows, knew about the potential of class claims during the pendency of the EEOC investigation.  The court will allow defendant to raise the issue again, if it so chooses, on a fully developed record in a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56.  If a class is certified, this decision does not and should be interpreted as making any finding with respect to when the class period would commence.

37

### *ORDER*

**AND NOW**, this 23rd day of December 2005, upon consideration of the

parties' submissions, **IT IS ORDERED** that the motion to dismiss (Doc. No. 5) filed by

defendant United Parcel Service, Inc. is **DENIED WITHOUT PREJUDICE** to defendant's

right to revisit the issue, subject to a review of a fully developed record, in a motion for summary

judgment filed pursuant to Federal Rule of Civil Procedure 56.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge


cc:     Counsel of record